# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **NAKISHA RODDY,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   No. 3:20-cv-00373 |
| | ) |
| **TENNESSEE DEPARTMENT OF** | ) |
| **CORRECTION,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

Nakisha Roddy, proceeding pro se,[1] brought this action against her former employer the Tennessee Department of Correction ("TDOC"), alleging that TDOC violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., by retaliating against her and subjecting her to a hostile work environment because she is African American. Before the Court is TDOC's Motion to Dismiss (Doc. No. 9; see also Doc. No. 10), to which Roddy has responded in opposition (Doc. No. 17). For the following reasons, TDOC's motion will be denied.

## I.    FACTUAL ALLEGATIONS[2]

TDOC is a government run agency that operates prisons, including the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee. (Doc. No. 5). While Roddy worked as a nurse at RMSI, other members of the nursing staff discriminated against her because

---

[1] Counsel subsequently entered a "Notice of Limited Appearance" on Roddy's behalf "to assist [her] with drafting and filing her response to [TDOC's] Motion to Dismiss[.]" (Doc. No. 12). Counsel is advised that a notice of "limited appearance" is not recognized under the Middle District of Tennessee's Local Rules.

[2] The Court draws the relevant background and facts from the Complaint (Doc. No. 1) and supplement to the Complaint (Doc. No. 5) and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

of her race. (Doc. No. 1 at 3, 5). For example, the Complaint alleges that an individual named "Tabitha Miller would address [Roddy] disrespectfully in front of others and question [her] performance because [she is] African American like many of the inmates [they] served." (Id. at 5). On August 21, 2019, Roddy complained to her manager about this treatment, and Roddy, Miller, and the unnamed manager had a meeting that same day. (Id.).

The next day, Roddy told her manager that she believed "Miller's statements and treatment were illegal and discriminatory." (Id.). Shortly thereafter, Roddy was "escorted to the Director of Nursing's office" and "accused of smuggling narcotics into the facility on August 7, 2019[.]" (Id.). The Director showed Roddy an "x-ray photo from security" showing that there "were narcotics in the vagina of whoever was in the photo[.]" (Id. at 6). Roddy claims that TDOC "fabricate[d] these horrible accusations against [her] with no evidence to back it up," particularly because she "was never stopped by security on that day," "never had any disciplinary problems on the job," and had even renewed her "contract with the facility" after this alleged incident on August 7, 2019. (Id. at 6–7). In any event, Roddy was "removed from the premises" after meeting with the Director on August 22, 2019, and she was "eventually fired[.]" (Id. at 5–6).

Based on the circumstances leading to her termination, Roddy brought claims against TDOC under Title VII, alleging that TDOC: (1) harassed her by creating a racially hostile work environment, and (2) retaliated against her for complaining about her co-worker's discriminatory conduct.[3] (Id.). TDOC now moves to dismiss the Complaint for lack of subject matter jurisdiction

---

[3] The Court previously dismissed Roddy's state-law claims under the Tennessee Human Rights Act and for "tortious interference w[ith] contract/business" because those claims were barred by sovereign immunity. (Doc. No. 6 at 5–6). The Court also substituted TDOC as the proper defendant. (Id. at 3).

under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## II. LEGAL STANDARD

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). Where, as here, a defendant makes a facial attack, the Court must take all of the allegations in the Complaint as true and determine "whether the plaintiff has alleged a basis for subject matter jurisdiction." Id. "A facial attack on subject matter jurisdiction is reviewed under the same standard as a [Rule] 12(b)(6) motion to dismiss." Mclemore v. Gumucio, No. 3:19-cv-00530, 2020 WL 7129023, at *3 (M.D. Tenn. Dec. 4, 2020) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). And "[w]hile the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

3

and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

**III.    ANALYSIS**

TDOC argues that the Court should dismiss this case because: (1) TDOC is entitled to sovereign immunity, and (2) the Complaint fails to state claims for racial harassment or retaliation under Title VII. Because TDOC raises sovereign immunity as a threshold defense to the Court's subject matter jurisdiction, the Court must address that issue first before analyzing whether Roddy plausibly alleged Title VII claims. See Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir. 2015) (holding that once sovereign immunity is raised as a jurisdictional defect, it must be decided before the merits).

   A.    Sovereign Immunity

Sovereign immunity under the Eleventh Amendment generally deprives federal courts of subject matter jurisdiction when a citizen sues a State. See Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (2004) (collecting cases and noting that the Supreme Court has "repeatedly held that an unconsenting State also is immune from suits by its own citizens"). "In addition to the states themselves, Eleventh Amendment immunity can also extend to departments and agencies of states." Mingus v. Butler, 591 F.3d 474, 481 (6th Cir. 2010) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). And, as relevant here, the Sixth Circuit has held that TDOC "and the prisons under its control are agencies of the state of Tennessee and are entitled to Eleventh Amendment immunity from suit for damages." See Wingo v. Tenn. Dep't of Corr., 499 F. App'x 453, 454 (6th Cir. 2012) (citations omitted). "However, Congress may remove this immunity by acting under § 5 of the Fourteenth Amendment which provides, 'the Congress shall

4

have power to enforce, by appropriate legislation, the provisions of this article.'"[4] Freeman v. Mich Dep't. of State, 808 F.2d 1174, at 1177 (6th Cir. 1987). "When Congress specifically relies on the enforcement section of the Fourteenth Amendment in creating a cause of action against the states, it abrogates their immunity from suit in federal court and removes the Eleventh Amendment limitation on the judicial power of the United States." Id.

Because Congress included "governmental agencies" in Title VII's definition of "employer," 42 U.S.C. § 2000e(b), there is no dispute that Congress acted under its Fourteenth Amendment Enforcement Clause powers to remove TDOC's sovereign immunity against Title VII claims when TDOC acts as an employer. See Freeman, 808 F.2d at 1177; Cox v. Shelby State Comm. Coll., 48 F. App'x 500, 504–05 (6th Cir. 2002) (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)). The issue, then, is whether the Complaint plausibly alleges that TDOC was Roddy's employer.

In support of TDOC's argument that it was not Roddy's employer (and is therefore entitled to sovereign immunity), it cites the following language from the Complaint: "Moreover, my *contract* with the facility was renewed since that date and I'd never had any disciplinary problems on the job[.] . . ." (See Doc. No. 1 at 6) (emphasis added). Based on this language, TDOC contends that because "[t]he Complaint establishes that [Roddy] was an independent contractor of nursing services" and "not [Roddy's] employer," her Title VII claims must be dismissed on sovereign

---

[4] There are two other potential exceptions to sovereign immunity: (1) when the State consents to suit and thereby waives its immunity; and (2) when the exception set forth in Ex Parte Young, 209 U.S. 123 (1908) applies. S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008). But the first exception does not apply here because TDOC has not consented to suit, and the Ex Parte Young exception does not apply because Roddy is neither suing a state official nor seeking equitable relief for ongoing violations of federal law. See Boler v. Earley, 865 F.3d 391, 412 (6th Cir. 2017) (noting that the Ex Parte Young exception to sovereign immunity "does not extend to retroactive relief or claims for money damages").

5

immunity grounds. (Doc. No. 10 at 5). In response, Roddy argues that the Court has subject matter jurisdiction over her Title VII claims "because a reasonable juror can find that [TDOC] is either her employer, joint employer, or that [TDOC] interfered with her employment opportunities." (Doc. No. 17 at 2–6).

It is axiomatic that an entity can be a Title VII employer if it directly employs the plaintiff-worker. However, "courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an 'employer' under" Title VII.[5] Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 (6th Cir. 1997). For example, a "joint employer" of another entity's formal employees may be treated as if it were a Title VII employer if it "share[s] or co-determine[s] those matters governing essential terms and conditions of employment." Sanford v. Main St. Baptist Church Manor, 449 F. App'x 488, 492 (6th Cir. 2011) (quoting Carrier Corp. v. NLRB, 768 F.2d 778, 781 (6th Cir. 1985)). "To determine whether an entity is the plaintiff's joint employer, [courts] look to an entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." EEOC v. Skanska USA Bldg., Inc., 550 F. App'x 253, 256 (6th Cir. 2013) (citing Carrier Corp., 768 F.2d at 781). The Sixth Circuit also takes the minority position that Title VII's definition of employer does not require a formal employment relationship, and that a defendant may be held liable under Title VII "if it significantly affects an individual's access to employment opportunities with third parties." Nethery v. Quality Care Invs., LP, 814 F. App'x 97, 104 (6th Cir. 2020) (citing Christopher v. Stouder Mem. Hosp., 936 F.2d 870, 875 (6th Cir. 1991)).

---

[5] In analyzing whether a defendant is an "employer" under Title VII, the Sixth Circuit relies on case law developed under Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act because all three statutes define "employer" essentially the same way. Swallows, 128 F.3d at 992 n.2 (citation and internal quotation marks omitted).

6

Accepting the Complaint's allegations as true and construing those allegations in the light most favorable to Roddy, as the Court is required to do at this stage, the Court may plausibly infer that TDOC was Roddy's "employer" for purposes of Title VII. First, TDOC's reliance on Roddy's use of the word "contract," (Doc. No. 1 at 6), easily supports an inference of an existing employment "contract," not just that Roddy was an independent contractor as TDOC argues. Second, the Complaint alleges that Roddy's "contract with the facility was renewed" (presumably by TDOC), and that she was "banned from the premises and eventually fired" for allegedly bringing narcotics into RMSI. (Doc. No. 1 at 6). These allegations support an inference that TDOC jointly employed Roddy because it appears that TDOC could affect Roddy's benefits by renewing her contract and had the ability to discipline her by banning her from RMSI. See Skanska, 550 F. App'x at 256. And third, because TDOC banned Roddy from RMSI, it is also plausible that TDOC significantly affected Roddy's ability to seek other employment opportunities as a nurse for inmates. See Christopher, 936 F.2d at 874–75.

To be sure, TDOC may ultimately prevail on this issue on summary judgment or at trial (where it will have the benefit of discovery and a more substantial factual record) by showing that it was not Roddy's joint employer and did not interfere with her access to other employment opportunities. But for now, the Court concludes that Roddy has plausibly alleged that TDOC was her "employer" for purposes of Title VII. Accordingly, the Court will deny TDOC's motion to dismiss Roddy's Title VII claims for lack of subject matter jurisdiction based on sovereign immunity.

B. Title VII Claims

The Court previously screened the Complaint under 28 U.S.C. § 1915(e)(2)(B) and determined that Roddy plausibly alleged Title VII claims for racial harassment (also known as hostile work environment) and retaliation. (Doc. No. 6 at 4–5). Having dispelled with TDOC's

7

sovereign immunity arguments, see Section III.A *supra*, the Court sees no reason to deviate from its prior reasoning. But given the procedural posture of this case, the Court is nevertheless obligated to reconsider those issues under the slightly less deferential Rule 12(b)(6) standard.

For Roddy's hostile work environment claim to survive TDOC's motion to dismiss, the Complaint must contain a short and plain statement showing that Roddy's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[.]" Barrett v. Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see also Primm v. Dep't of Human Servs., No. 16-6837, 2017 WL 10646487 (6th Cir. Aug. 17, 2017) (noting that the Rule 12(b)(6) standard does not require a plaintiff to allege the prima facie elements of a hostile-work-environment claim). Here, the Complaint alleges that Roddy received "discriminatory treatment from fellow nursing staff because of [her] race," and that her co-worker, Ms. Miller, would "address [her] disrespectfully in front of others and question [her] performance because [she is] African American." (Doc. No. 1 at 5). TDOC argues that these allegations are deficient because they do not explain how often the harassment occurred, and the Sixth Circuit has dismissed hostile work environment claims *on summary judgment* when "it is clear from the record that such conduct in front of [the plaintiff] was not a daily or even a weekly event."[6] Kelly v. Senior Ctrs., Inc., 169 F.

---

[6] TDOC misleadingly argues that the harassment allegations in Kelly were "not enough to survive a *Rule 12(b)(6) motion* because the allegations did not establish the conduct as severe as pervasive, that it occurred daily or even weekly." (Doc. No. 10 at 7) (emphasis added). That is not true. Kelly was decided on summary judgment after the parties had an opportunity to conduct discovery and develop the factual record. 169 F. App'x at 430 ("affirm[ing] the district court's grant of summary judgment to defendants on [plaintiff's] hostile work environment claim"). Thus, Kelly further supports Roddy's position that the Court should allow the discovery phase of this case to move forward.

8

App'x 423, 429 (6th Cir. 2006). But construing the Complaint in the light most favorable to Roddy and giving proper weight to her pro se status, the Court may draw the reasonable inference that the cumulative effect of these alleged discriminatory actions created a hostile work environment. See Pardus, 551 U.S. at 94 (citation omitted) (noting that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than former pleadings drafted by lawyers"). Thus, the Court will not dismiss Roddy's hostile work environment claim at this juncture.

Nor will the Court dismiss Roddy's retaliation claim, which requires her to allege that she suffered an adverse action for opposing a practice that Title VII forbids. See Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e-3(a)). The Complaint alleges that within one day of Roddy telling her manager about her co-worker's unlawful racial harassment, she was falsely accused of smuggling narcotics into RMSI, banned from the premises, and eventually fired. (Doc. No. 1 at 5–6); see also Brown v. VHS of Mich., Inc., 545 F. App'x 368, 373 (6th Cir. 2013) (quoting 42 U.S.C. § 2000e-3(a)) (noting that an employee engages in protected activity when she has, among other things, "'opposed any practice' made unlawful under Title VII). If the drug-smuggling accusations against Roddy were in fact false, then the Complaint's allegations would support an inference that TDOC banned her from the premises (a potential adverse action) after learning that she opposed her co-worker's "illegal and discriminatory" actions. That is enough to survive a motion to dismiss.

As a final note, TDOC's arguments in favor of dismissal reflect a misunderstanding of the Supreme Court's pleading requirements. Although Roddy must ultimately prove all of the elements of her claims to prevail, she does not have the initial burden of establishing a prima facie hostile work environment or retaliation claim to survive a motion to dismiss. See Swierkiewicz, 534 U.S. at 512. Instead, the Complaint need only allege "sufficient 'factual content' from which

9

Case 3:20-cv-00373   Document 18   Filed 05/21/21   Page 9 of 10 PageID #: 74

a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that TDOC subjected Roddy to a hostile work environment or retaliated against her. See Keys v. Humana, Inc., 684 F.3d 605, 610 (6th Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Although the Court expresses no opinion about whether TDOC's arguments may prevail on a motion for summary or at trial, it concludes that Roddy has sufficiently alleged Title VII claims for racial harassment and retaliation. Accordingly, the Court will deny TDOC's motion to dismiss for failure to state a claim.[7]

### IV. CONCLUSION

For the foregoing reasons, TDOC's Motion to Dismiss (Doc. No. 9) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] TDOC also argues in its motion that Roddy failed to state a claim for discrimination based on race. (Doc. No. 10 at 8). That argument appears moot, however, because Roddy never argued that she was bringing a general race discrimination claim and the Complaint does not allege that she "was treated differently than similarly-situated, non-protected employees." See Momah v. Dominguez, 239 F. App'x 114, 122 (6th Cir. 2007). But to the extent Roddy did in fact assert a general race discrimination claim, that claim is forfeited because Roddy never filed a response to TDOC's arguments. See L.R. 7.01(a)(3); see also Humphrey v. U.S. Attorney Gen.'s Office, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that when plaintiff fails to respond to an argument in defendant's motion to dismiss, any opposition is waived).